## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TAYLER SHELTON, individually and on behalf of all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 3:21-cv-00408-GCS |
| v. | ) | |
| | ) | |
| SUPERVALU INC., and UNITED NATURAL FOODS, INC. | ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Tayler Shelton ("Plaintiff"), individually, and on behalf of all others similarly situated, for her First Amended Class Action Complaint against Defendants SuperValu Inc. ("SuperValu") and United Natural Foods, Inc. ("UNFI") (collectively "Defendants"), states as follows:

## NATURE AND SUMMARY OF THE ACTION

1.     This action arises out of misrepresentations and deception by Defendants in marketing, labeling, and selling their Essential Everyday-brand ground coffee in canisters that grossly overstate the number of cups of coffee that can be made from their contents.

2.     These canisters each contain a representation that the contents are sufficient to make a specified number of cups.  However, using the directions for making coffee on the canister, the contents are insufficient to make the number of cups advertised.

3.     For example, some of the canisters of Essential Everyday-brand ground coffee state that they will make 210 six fluid ounce cups of coffee.  These canisters contain directions to make coffee by using one tablespoon of ground coffee for each six fluid ounce cup of coffee. However, using that method, the contents of the canisters will make no more than 137 six fluid

ounce cups of coffee.   As set forth below, following the canisters' alternative direction to make 10 cups of coffee also leaves the consumer significantly short—in this example with only 171.5 cups.

4.      This is not a "slack-fill" case—where the size of the box makes a consumer think she will receive more product than is actually in the box.  Instead, it is a case where the product label includes a misstatement that the consumer will be able to get a certain quantity that is impossible to obtain when following the product's own instructions.

5.      Plaintiff, Tayler Shelton, who has suffered an ascertainable loss from Defendants' misrepresentations and unfair practices, brings this action on behalf of herself and other similarly situated consumers.

## THE PARTIES

6.      Plaintiff Tayler Shelton is a citizen of Illinois.

7.      Defendant UNFI is a Delaware corporation with its principal place of business in Providence, Rhode Island.

8.      Defendant SuperValu is a Delaware corporation with its principal place of business in Eden Prairie, Minnesota.

## JURISDICTION AND VENUE

9.      This Court has personal jurisdiction over Defendants because Defendants regularly and purposefully direct their activities at residents of Illinois, and the litigation results from alleged injuries that arise out of or relate to those activities.

10.      This class action was originally filed in the Circuit Court for Madison County, Illinois.  Venue is proper in this Court because Defendant removed this action to this Court pursuant to the Class Action Fairness Act, 18 U.S.C. § 1332(d).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### SuperValu

11.    SuperValu is one of the largest American wholesaler and retailer of grocery products.

12.    SuperValu manufactures, packages, labels, and distributes more than 250,000 products, including: (1) grocery and general merchandise; (2) produce; (3) perishables and frozen foods; (4) nutritional supplements and sports nutrition; (5) bulk and food service products; and (6) personal care items.

13.    SuperValu manufacturers, packages, labels, and distributes ground coffee under various brandnames, including Essential Everyday,  Field Day, Shoppers Value, and Springfield.

### UNFI

14.    UNFI is a North American wholesale food and meat distributor of bulk foods and products to the grocery stores within its chain.  UNFI delivers products to customer locations throughout North America, including natural product superstores, independent retailers, conventional supermarket chains, ecommerce retailers, and food service customers.

### UNFI Acquires SuperValu

15.    In or about October 2018, UNFI acquired SuperValu for approximately $2.9 billion, including the assumption of all outstanding debt and liabilities.

16.    Since July 25, 2018, SuperValu has operated as a wholly owned subsidiary of UNFI, with the pair manufacturing, packaging, labeling, distributing, and selling ground coffee under the Essential Everyday brand.

**The Class Products**

17.     Defendants manufacture, label, market, promote and sell ground coffee in canisters under their Essential Everyday brand across the United States, including in Illinois.

18.     UNFI's 2019 10-K describes Essential Everyday as a "core brand" of its "private-label products."

19.     UNFI and Supervalu manufacture, label, sell and distribute Essential Everday coffee both to wholesale customers and through Supervalu-operated retail stores to shoppers.

20.     Defendants' Essential Everyday ground coffee is sold in canisters and bags (the "Products").  Each Product that is sold in a canister is referred to herein as a "Class Product" (collectively the "Class Products").

21.     The Class Products are sold in various sizes—including 10.3 oz., 11.3 oz., 24.2 oz., 25.4 oz., 27.8 oz., 30.5 oz., 33.9 oz.—and various flavors—including Classic Roast, French Roast, Supreme Blend, 100% Columbian, and Breakfast Blend.

22.     The front of the Class Products prominently represents an amount of six fluid ounce cups that can be made from the canisters' contents.

23.     For example, in Plaintiff's case, the Class Product purchased—the 24.2 oz. Essential Everyday Supreme Blend—prominently states on its label that it "MAKES UP TO 210 6 FL OZ CUPS," as shown below:



24.     Here are images of other Class Products showing similar representations:

 










25.     As can be seen, the number of cups that Defendants represent can be made depends on the size of the canister of the Class Products.  The 33.9 oz can represents that 270 cups can be made; the 30.5 oz. and 27.8 oz. cans represent that 240 cups can be made; the 25.4 oz. and 24.2 oz. cans represent that 210 cups can be made; and the 11.3 oz. and 10.3 oz. cans represent that 90 cups can be made.

26.     Those representations, and all similar representations, on the Class Products about the number of cups that can be made are false.

27.     One tablespoon of ground coffee typically weighs approximately five grams.[1]

28.     One level tablespoon of Defendants' coffee that was purchased by Plaintiff weighs 5 grams.

29.     The pictures below show one level tablespoon of Defendants' coffee that Plaintiff purchased being weighed on two different scales, showing that it weighs 5 grams (the scales were tared so they only show the weight of the coffee, not the container):

 

---

[1] https://www.homegrounds.co/how-to-measure-coffee/#:~:text=There%20is%20approximately%205%20grams%20of%20ground%20coffee%20per%20tablespoon. (accessed on Feb. 17, 2021).

30.     The Specialty Coffee Association ("SCA") issues a "Golden Cup Standard,"
which recommends a coffee-to-water ratio of 55 grams per liter, plus or minus 10%.  This
equates to 9.75 grams per six oz. ± 10%.  Thus, the SCA recommends approximately 9 to 11
grams (roughly 2 tablespoons) of coffee for every six fluid ounce cup that is brewed.

31.     The preparation directions on the back of the Class Products direct consumers to
use two methods to prepare their coffee, each using less than the SCA-recommended amount.
Thus, Defendants' directions result in a relatively weaker cup of coffee.

32.      To make a six fluid ounce cup, the consumer is to use one tablespoon of ground
coffee, and to make ten cups, the consumer is to use half a measuring cup, as shown below:



33.     However, those instructions will not produce the number of six fluid ounce cups
of coffee represented on the package.

34.     Using the Class Products' one-cup instruction to use one tablespoon of ground
coffee per six fluid ounce cup of coffee, the 24.2 ounce/686 gram-sized Class Products will
produce only 137.2 (or approximately 137) cups of coffee, **73 cups fewer than the 210
advertised** prominently on the Class Products.

35.    The table below shows, for each of the above-referenced sizes of Class Products, the number of cups Defendants represent can be made compared to the actual number that the canister will make based on the above instructions, along with the difference:

| Class Product Size | Represented yield | Actual yield | Difference |
|---|---|---|---|
| 10.3 oz./292 g. | 90 cups | 58 cups | **32 cups** |
| 11.3 oz./320 g. | 90 cups | 64 cups | **26 cups** |
| 24.2 oz./686 g. | 210 cups | 137 cups | **73 cups** |
| 25.4 oz./720 g. | 210 cups | 144 cups | **66 cups** |
| 27.8 oz./788 g. | 240 cups | 158 cups | **82 cups** |
| 30.5 oz./864 g. | 240 cups | 173 cups | **67 cups** |
| 33.9 oz./961 g. | 270 cups | 192 cups | **78 cups** |

36.    Following the alternative instructions on the Class Products to make 10 cups of coffee also fails to make the number of cups represented on the canister.  As set forth above, one tablespoon of Defendants' ground coffee weighs 5 grams.  There are 8 tablespoons in a half cup[2], meaning a half cup of Defendants' ground coffee weighs 40 grams.  Thus, following Defendants' 10-cup instruction to use a half cup of ground coffee, the 24.2 oz./686 g. Class Products will produce only 171.5 cups of coffee, not 210 cups.

---

[2] https://www.thecalculatorsite.com/articles/cooking/cups-and-tablespoons.php (accessed 3/25/21).

37.    The table below shows, for each of the above-referenced sizes of Class Products, the number of cups Defendants represent can be made while following the 10-cup instruction compared to the actual number that the canister will make, along with the difference.

| Class Product Size | Represented yield | Actual yield | Difference |
|---|---|---|---|
| 10.3 oz./292 g. | 90 cups | 73 cups | **17 cups** |
| 11.3 oz./320 g. | 90 cups | 80 cups | **10 cups** |
| 24.2 oz./686 g. | 210 cups | 171.5 cups | **38.5 cups** |
| 25.4 oz./720 g. | 210 cups | 180 cups | **30 cups** |
| 27.8 oz./788 g. | 240 cups | 197 cups | **43 cups** |
| 30.5 oz./864 g. | 240 cups | 216 cups | **24 cups** |
| 33.9 oz./961 g. | 270 cups | 240.25 cups | **29.75cups** |

38.    However, because the single-serving method (1 tablespoon/cup) requires more ground coffee than the 10-serving instruction (0.8 tablespoons/cup), a reasonable person would assume that Defendants' representation that the Class Products make a certain number of six ounce cups is based on the single-serving method.  For example, if the 210-cup representation was based on the 10-serving method, it would be impossible to achieve 210 cups using the single-serving method.

39.    Thus, the amount of cups the canister can make should equal the number of tablespoons of coffee in the canister.  For example, if 1 tablespoon of coffee makes a six fluid ounce cup, and the canister can make 210 six fluid ounce cups, there should be 210 tablespoons of coffee in the canister.

40.     If there are 210 tablespoons of coffee in the canister, then, using the 10-serving method alone would yield 262.5 six fluid ounce cups.[3]

41.     Based on this extrapolation for each Class Product size, the difference in represented and actual yield closely matches the disparity of following the single-serving instructions, as shown in the following chart:

| Class Product Size | Represented yield/tablespoons | Extrapolated yield | Actual yield | Difference |
|---|---|---|---|---|
| 10.3 oz./292 g. | 90 | 112.5 cups | 73 cups | **39.5 cups** |
| 11.3 oz./320 g. | 90 | 112.5 cups | 80 cups | **32.5 cups** |
| 24.2 oz./686 g. | 210 | 262.5 cups | 171.5 cups | **91 cups** |
| 25.4 oz./720 g. | 210 | 262.5 cups | 180 cups | **82.5 cups** |
| 27.8 oz./788 g. | 240 | 300 cups | 197 cups | **103 cups** |
| 30.5 oz./864 g. | 240 | 300 cups | 216 cups | **84 cups** |
| 33.9 oz./961 g. | 270 | 337.5 cups | 240.25 cups | **97.25 cups** |

42.     Defendants' representations regarding the number of cups its canisters of Class Products will make are unfair, misleading, and/or deceptive because a reasonable consumer like Plaintiff expects that if the Class Product's preparation instructions are followed, the canister will yield the number of cups of coffee prominently displayed on the packaging, or a corresponding, proportionate amount if a different method of preparation is used. However, that is not the case.

43.     By placing the representation regarding the number of cups the canister will make in such a prominent position on the packaging of the Class Products, Defendants intended that consumers would rely on it when deciding to purchase the product.

---

[3] 10 cups for every 8 tablespoons of coffee means 1.25 cups for every tablespoon. 1.25 cups x 210 tablespoons per canister = 262.5 cups per canister.

44.    Defendants' conduct is especially egregious when considered in the context of other brands of coffee, including some of Defendants' other brands.  Not all brands of coffee sold in canisters contain a representation regarding the number of cups that can be made from the contents, much less a false representation.

45.    For example, Maxwell House's "Houses for Heroes," Folgers Noir, and Chock full o' Nuts coffee are sold in cans that do not contain such a representation:



46.    In addition, Defendants have other brands of coffee sold in cans and bags that do not include a representation of the number of cups that can be made from the contents, such as the Shoppers Value brand and Field Day brand shown below:




47.    Other competitors of Defendants' Essential Everyday brand sell coffee in cans that display the number of cups that can be made from the contents without overstating that number. For example, Dunkin Original Blend coffee is sold in a 30 oz. canister that represents it will make only up to 100 six-fluid oz. cups even though, by using the directions on the canister, one could actually make 113 cups:




48.     These examples of ground-coffee products that do not misrepresent the number of cups that can be made from their contents—and, in many cases, do not even show the number of such cups—demonstrate that there is no legitimate commercial reason why Defendants display the number of cups that can be made from some of its coffee products and misrepresent that fact.

**Plaintiff Purchases the Class Product**

49.     In March or April of 2020, Plaintiff was shopping at a Capri IGA in Hillsboro, Illinois.

50.     While shopping for ground coffee at Capri IGA, Plaintiff was exposed to and read the label for the Class Products, including the representation regarding the number of six fluid ounce cups of coffee that could be made from the canister.

51.     At all times, Plaintiff believed and had a reasonable expectation that the labeling on the Class Products was truthful and accurate.

52.     Plaintiff purchased Defendants' 24.2 oz. Essential Everyday Supreme Blend, which represented it could make 210 six fluid ounce cups.

53.     When making coffee with the Class Product, Plaintiff typically made a 10 oz. cup of coffee by filling her "My K-Cup" reusable coffee filter to the fill-line, which, according to the package, holds 2.7 tablespoons.  This equates to Plaintiff typically using 1.62 tablespoons of the Class Product per six oz. cup.

54.     Following this method, Plaintiff was able to obtain the equivalent of only 84.7 six-ounce cups from the canister.[4] Adjusting for her different method of making coffee and extrapolating from Defendants' instructions, if the can were able to yield 210 six-ounce cups, at one tablespoon per cup, it should have been able to make approximately 129.6 six-ounce cups

---

[4] 1.62 tablespoons of the Class Products weighs 8.1 grams.

using Plaintiff's method. Thus, whether she followed the instructions or her own method, she was only able to obtain approximately 65% of the number of cups represented on the label or extrapolated therefrom.

55.    As a direct result of Defendants' misrepresentations of the number of cups that can be made from the Class Products as set forth above, Plaintiff and other members of the Class have been deprived of the benefit of the bargain in purchasing these products because the Class Products had less value than represented.

56.    Consequently, Plaintiff and members of the Class have suffered injury and lost money and property in purchasing the products listed above.

57.    Likewise, Plaintiff faces a threat of future harm because she will be unable to rely on the Class Products' advertising or labeling in the future, and so will not purchase the Class Products although she would like to do so.

## CLASS ACTION ALLEGATIONS

58.    Plaintiff brings this class action on behalf of herself and all others similarly situated, as representative of the following class (the "Class"):

> All consumers within the State of Illinois who purchased one or more of the Class Products in Illinois during the Class Period.

59.    Excluded from the Class are any Defendants, its parents, subsidiaries, affiliates, predecessors, successors, officers, directors, and the immediate family members of such persons. Also excluded are any trial judge who may preside over this action, court personnel and their family members and any juror assigned to this action.

60.    Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or division into subclassses after having had an opportunity to conduct discovery.

15

61.     The Class Period is that period within the statute of limitations for this action and

extending until a Class is certified herein.

62.     The Class is certifiable under Fed. R. Civ. P. 23.

63.     **Numerosity.**  The members of the Class are so numerous that joinder of all

members is impracticable.  The determination of the numerosity factor can be made from

Defendants' records.

64.     **Commonality and Predominance**.  There are questions of law and fact common

to the Class, which predominate over any questions affecting individual members of the Class.

These common questions of law and fact include, without limitation:

    a.  Whether the Class Products sold during the Class Period contained representations regarding the number of cups that could be made from their contents;

    b.  Whether Defendants' representations regarding the number of cups that could be made was material;

    c.  Whether Defendants' representations regarding the number of cups that could be made constitutes the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact;

    d.  Whether Defendants' representations regarding the number of cups that could be made was likely to mislead a reasonable consumer;

    e.  Whether Defendants have been unjustly enriched by the retention of profits from the sale of the misleading Class Products that it manufactured, labeled, marketed, sold, and distributed;

    f.  Whether Plaintiff and the members of the Class are entitled to an award of compensatory damages and/or restitution and/or disgorgement;

    g.  Whether injunctive, declaratory, and/or or other equitable relief is warranted pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act; and

    h.  Whether Plaintiff and the Class are entitled to an award of punitive damages as permitted by the Illinois Consumer Fraud and Deceptive Business Practices Act.

65.    **Adequacy**.  Plaintiff is a member of the Class she seeks to represent, is committed to the vigorous prosecution of this action, and has retained competent counsel experienced in the prosecution of class actions.  Accordingly, Plaintiff is an adequate representative and will fairly and adeuately protect the interests of the Class.

66.    **Typicality.** Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and all Class Members purchased Class Products that misrepresented the number of cups of coffee that could be made from their contents.

67.    **Superiority.**  A class action is an appropriate method for the fair and efficient adjudication of this controversy and is superior to all other available methods.  Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendants, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, Class members will continue to suffer losses and Defendants' misconduct will proceed without remedy.  Even if Class members could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard that might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.  Finally, Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

68.    **Class Action on Limited Issues.**  Because there are common individual issues

among the Class, it is appropriate for this action to be maintained as a class action with respect to particular issues if necessary.  *See* Fed. R. Civ. P. 23(c)(4).

**COUNT I**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**By Means of Unfair Business Practices – 815 ILCS § 505/1 *et seq.***

69.    Plaintiff incorporates by reference each and every allegation set forth above as if fully set forth herein.

70.    Each Class Product is "merchandise" pursuant to 815 ILCS § 505/1(f).

71.    Plaintiff is a "person" pursuant to 815 ILCS § 404/1(c) because she is an individual.

72.    The advertising, offering for sale, sale, and/or distribution of the Class Products constitutes "trade" or "commerce" pursuant to 815 ILCS § 505/1(f).

73.    Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2, prohibits unfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby."

74.    Section 2 further prohibits unfair methods of competition and unfair or deceptive acts or practices, including "the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act[.]"

75.    Section 2 also provides: "In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."

76.    As set forth above, Defendants engaged in, *inter alia*, the following practices in transactions with Plaintiff and the Class in Illinois which were intended to result in, and did result in, the sale of the Class Products:

  a.  Falsely stating, misrepresenting, concealing, omitting, and/or suppressing material facts regarding the number of cups that a can of the Class Products can make.

  b.  Representing that the Class Products have characteristics, benefits, and/or quantities that they do not have.

  c.  Advertising goods with intent not to sell them as advertised.

77.    Defendants falsely stated, misrepresented, concealed, omitted, and/or suppressed material facts on the Class Products' labels as described above when they knew, or should have known, that the Class Products could not make the number of cups stated on the label.

78.    The acts and practices engaged in by Defendants, as set forth herein, constitute unfair business practices in violation of 815 ILCS § 505/1 *et seq.* because they involve practices described in Section 2 of the Uniform Deceptive Trade Practices Act.

79.    Alternatively, the acts and practices engaged in by Defendants, as set forth herein, constitute unfair business practices in violation of 815 ILCS § 505/1 *et seq.* because they (a) offend public policy; (b) are immoral, unethical, oppressive, or unscrupulous; and/or (c) cause substantial injury to consumers.

80.     The aforesaid unfair acts and practices occurred in the course of conduct involving trade or commerce.

81.     Defendants intended that Plaintiff and the Class members rely on the aforesaid unfair acts and practices.

82.     As set forth above, Plaintiff paid for a product representing it could make 210 six fluid ounce cups of coffee with directions for using either one tablespoon of coffee for each cup or eight tablespoons for ten cups.

83.     As set forth above, it was impossible for Plaintiff to make 210 six fluid ounce cups of coffee following the directions on the can (or a corresponding, proportionate amount using a different method of preparation).

84.     Thus, Plaintiff paid for a product that advertised it could make 210 six fluid ounce cups, or proportionate extrapolations therefrom, but received a product that actually made fewer servings than represented.

85.     Defendants' misrepresentations caused Plaintiff to believe that she paid the fair market value for Defendants' coffee that could make 210 six fluid ounce cups, or proportionate extrapolations therefrom, and not the smaller quantity of servings that she actually got.  Thus, she paid more than the actual value of the coffee because she received Defendants' coffee that made far fewer than the represented amount of servings.

86.     As a direct and proximate result of the aforesaid violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, Plaintiff and the Class have suffered an ascertainable loss of money and/or property in that they overpaid for the Class Products because they paid a price that was based on Defendants' material misrepresentations and concealments

regarding the number of cups that can be made from the Class Products, in an amount to be proved at trial.

87.     Defendants continue to manufacture, label, market, advertise, and sell the Class Products with the misleading disclosure of the number of cups that can be made from the Class Products.

88.     815 ILCS § 505/10 permits the Court to enter injunctive relief to prevent Defendants' continued violation of the law by continuing to manufacture, label, market, advertise, and sell the Class Products with the misrepresentations described herein.

89.     Defendants' conduct constitutes a willful, wanton, and reckless disregard and indifference to Plaintiff and the Class members' rights, and an award of punitive damages is necssary to punish Defendants and deter others from like conduct in the future.

90.     Plaintiff has been forced to hire attorneys to enforce her rights under the Illinois Consumer Fraud and Deceptive Business Practices Act.

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

### COUNT II
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### By Means of Deceptive Acts or Practices – 815 ILCS § 505/1 *et seq.*

91.     Plaintiff incorporates by reference each and every allegation set forth above as if fully set forth herein.

92.     Defendants' false statements, omissions, and misrepresentations described herein constitute deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of material facts in connection with the sale of merchandise in Illinois.

93.     The acts and practices engaged in by Defendants, as set forth herein, constitute

deceptive and/or fraudulent business practices in violation of 815 ILCS § 505/1 *et seq*.

94.     The aforesaid fraudulent and deceptive acts and practices occurred in the course

of conduct involving trade or commerce.

95.     Defendants intended that Plaintiff and the Class rely on the aforesaid deceptive

advertising, acts and practices.

96.     As set forth above, Plaintiff paid for a product representing it could make 210 six

fluid ounce cups of coffee with directions for using either one tablespoon of coffee for each cup

or eight tablespoons for ten cups.

97.     As set forth above, it was impossible for Plaintiff to make 210 six fluid ounce

cups of coffee following the directions on the can (or a corresponding, proportionate amount

using a different method of preparation).

98.     Thus, Plaintiff paid for a product that advertised it could make 210 six fluid ounce

cups, or proportionate extrapolations therefrom, but received a product that actually made fewer

servings than represented.

99.     Defendants' misrepresentations deceived Plaintiff into believing that she paid the

fair market value for Defendants' coffee that could make 210 six fluid ounce cups, or

proportionate extrapolations therefrom, and not the smaller quantity of servings that she actually

got.  Thus, she paid more than the actual value of the coffee that made far fewer than the

represented amount of servings.

100.     As a direct and proximate result of the aforesaid violations of the Illinois

Consumer Fraud and Deceptive Business Practices Act, Plaintiff and the Class have suffered an

ascertainable loss of money and/or property in that they overpaid for the Class Products because

they paid a price that was based on Defendants' material misrepresentations and concealments regarding the number of cups that can be made from the Class Products, in an amount to be proved at trial.

101.    Defendants continue to manufacture, label, market, advertise, and sell the Class Products with the misleading disclosure of the amount of cups that can be made from the Class Products.

102.    815 ILCS § 505/10 permits the Court to enter injunctive relief to prevent Defendants' continued violation of the law by continuing to manufacture, label, market, advertise, and sell  the Class Products with the misrepresentations described herein.

103.    Defendants' conduct as aforesaid was and continues to be wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiff and others similarly situated and, therefore, warrants the imposition of punitive damages.

104.    Plaintiff has been forced to hire attorneys to enforce her rights under the Illinois Consumer Fraud and Deceptive Business Practices Act.

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

## COUNT III
## Unjust Enrichment

105.    Plaintiff brings this Count in the alternative to her claims for legal relief set forth above

106.    Plaintiff incorporates by reference paragraphs 1-68 set forth above as if fully set forth herein.

107.    Plaintiff and the Class members conferred a monetary benefit on Defendants when they paid for the Class Products.

108.    As set forth above, Defendants knowingly misrepresented and concealed material facts in connection with their manufacturing, labeling, marketing, advertising , and sales of the Class Products.

109.    As a direct and proximate result of Defendants' conduct, Plaintiff and the Class members overpaid for the Class Products because they paid a price that was based on Defendants' material misrepresentations and concealments regarding the number of cups that can be made from the Class Products.

110.    Defendants have retained Plaintiff's and the Class members' purchase price despite their knowing misrepresentations and concealments on the Class Products' labels.

111.    As a result, Defendants have been unjustly enriched at the expense of Plaintiff and the Class.

112.    Under principles of equity and good conscience, Defendants should not be permitted to retain the money gained through deceptive and fraudulent material misrepresentations and omissions in the manufacturing, labeling, marketing, advertising, and sale of the Class Products.

113.    Accordingly, Plaitniff and the Class seek full disgorgement and restitution of the amounts Defendants have retained as a result of the unlawful and/or wrongful conduct alleged herien, and amount which will be proved at trial.

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, prays for relief as follows:

A.     an order from the Court certifying the Class pursuant to 735 ILCS § 5/2-801, *et seq.* and appointing Plaintiff as class representative and her counsel as Class Counsel;

B.     compensatory damages in an amount to be proved at trial;

C.     injunctive relief as permitted by law or equity, including, but not limited to, enjoining Defendants from continuing the unlawful practices as set forth herein and ordering Defendants to engage in a corrective advertising campaign;

D.     restitution and/or disgorgement, in an amount to be proved at trial;

E.     an award of punitive damages in such amount sufficient to punish Defendants and deter others from like conduct in the future pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act;

F.     Plaintiff's costs of suit, including reasonable attorneys' fees as provided by law;

G.     pre-judgment and post-judgment interest as provided under the law; and

H.     such other and further relief as this Court deems just and necessary.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues stated herein, and all issues so triable.

Respectfully submitted,

**GOLDENBERG HELLER & ANTOGNOLI, P.C.**

*/s/ Kevin P. Green*
Mark C. Goldenberg, #0990221
Thomas P. Rosenfeld, #06301406
Kevin P. Green, #06299905
2227 S. State Route 157
Edwardsville, IL 62025
Telephone:    618.656.5150
Facsimile:    618.656.6230
mark@ghalaw.com
tom@ghalaw.com
kevin@ghalaw.com

Richard S. Cornfeld, #0519391
Daniel S. Levy, #6315524
Law Office of Richard S. Cornfeld, LLC
1010 Market Street, Suite 1645
St. Louis, Missouri 63101
P. 314-241-5799
F. 314-241-5788
rcornfeld@cornfeldlegal.com
dlevy@cornfeldlegal.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2021, the foregoing was filed with the Court Clerk via the Court's electronic filing system and served on upon all counsel of record via the Court's electronic notification system.

/s/ Kevin P. Green